NATALIE K. WIGHT, OSB # 035576
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:22-cr-00213-02-MO |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **JENNIFER McCONNON,** | |
| Defendant. | |

The government asks the Court to sentence defendant to credit for time served, to be followed by a three-year term of supervised release.

**A.    Summary of Proceedings.**

On January 21, 2025, defendant is scheduled for both a change of plea and sentencing. Defendant is scheduled to enter a guilty plea to Count 1 of the Indictment which charges her with engaging in a Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841(b)(2), and 846. The maximum sentence the Court may impose is a term of 20 years' imprisonment, a fine of $1,000,000, and at least three years of supervised release. There is also a $100 fee assessment.

A pre-plea Presentence Report (PSR) has been completed. The government believes that the facts underlying the defendant's count of conviction, her Sentencing Guideline calculations, her criminal history, and her personal history and characteristics are accurately laid out in both the PSR and the plea agreement. In her plea agreement defendant will be admitting to the following:

> [T]hat on or about January 2020, and continuing through on or about September 16, 2021, within the District of Oregon and elsewhere, she was a member of a vast international drug distribution organization being run out of India that was illegally distributing and possessing with the intent to distribute hundreds of thousands of real and counterfeit pills containing various Schedule II, Schedule III, and Schedule IV controlled substances that were being sent into and throughout the United States for purposes of further distribution, including within the District of Oregon.
>
> Defendant JOHN DOE # 1 a.k.a. "Bunny Jinn," was the organizer, leader, manager, and supervisor of this overseas drug distribution organization being run out of India, and he would arrange, coordinate, and export packages of real and counterfeit pills and tablets containing various controlled substances, to include Tapentadol, Lorazepam, Alprazolam, Clonazepam, Diazepam, Carisoprodol, Ketamine, and Tramadol into and throughout the United States, including to defendant McConnon within the District of Oregon, for purposes of further distribution.
>
> Defendant McConnon would, operating within the District of Oregon, receive, transport, store, repackage, conceal, possess with the intent to distribute, and then further distribute pills and tablets containing various Schedule II, III, and IV controlled substances, to include Tapentadol, Lorazepam, Alprazolam, Clonazepam, Diazepam, Carisoprodol, Ketamine, and Tramadol, to customers throughout the United States.
>
> Defendant McConnon would utilize encrypted messenger applications, cellular telephones, and text messaging services to communicate and further the distribution and possession with the intent to distribute pills and tablets containing various Schedule II, III, and IV controlled substances, to include Tapentadol, Lorazepam, Alprazolam, Clonazepam, Diazepam, Carisoprodol, Ketamine, and Tramadol.
>
> Defendant McConnon maintained premises in Keizer, Oregon for the purposes of storing, packaging, possessing with the intent to distribute, and distributing pills and tablets containing various Schedule II, III, and IV controlled substances, to include Tapentadol, Lorazepam, Alprazolam,

> Clonazepam, Diazepam, Carisoprodol, Ketamine, and Tramadol, all Schedule II, III and IV controlled substances.
>
> Defendant McConnon utilized a Post Office Box located in Keizer, Oregon to receive packages of pills containing controlled substances, to include Tapentadol, Lorazepam, Alprazolam, Clonazepam, Diazepam, Carisoprodol, Ketamine, and Tramadol for purposes of further distribution.

Plea Agreement ¶ 6.

A picture of the Tapentadol pills that were seized on September 9, 2021, which started this investigation into the defendant and are referenced in the PSR, are depicted below:



**B.     Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'... and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)(quoting

**Government's Sentencing Memorandum** Page 3

*Kimbrough v. United States*, 552 U.S. 85, 108 (2007)). "All sentencing proceedings are to begin by determining the applicable Guideline range." *Id*.

The parties agree that defendant was involved in the redistribution of various Schedule II, III, and IV controlled substances for a period of time and that her relevant conduct, pursuant to U.S.S.G. §§ 1B1.3, 2D1.1(a), and 2D1.1, comment (n. 8) (Drug Conversion Tables), includes the following:

| Controlled Substance | Approximate Weight Seized | Units | Converted Drug Weight |
|---|---|---|---|
| Tapentadol, a Schedule II controlled substance[1] | 24.1 kilograms | 50,000 | 50 kilograms |
| Lorazepam, a Schedule IV controlled substance[2] | 1.73 kilograms | 26,188 | 1.636 kilograms |
| Alprazolam, a Schedule IV controlled substance[3] | 274 grams | 2,715 | 169 grams |
| Clonazepam, a Schedule IV controlled substance[4] | 2.35 kilograms | 15,829 | 989 grams |
| Diazepam, a Schedule IV controlled substance[5] | 449 grams | 2,235 | 139 grams |
| Carisoprodol, a Schedule IV controlled substance[6] | 24 kilograms | 40,500 | 2.531 kilograms |
| Ketamine, a Schedule III controlled substance[7] | 1 kilogram | 2,474 | 2.4 kilograms |
| Tramadol, a Schedule IV controlled substance[8] | (unknown but detected within the Ketamine seizure) | n/a | n/a |

for an initial estimated Base Offense Level of 18. PSR ¶ 49, Plea Agreement ¶ 8. This Base Offense Level is not in dispute.

---

[1] Tapentadol is a opioid, classified as a depressant, and used to treat pain severe enough to require opioid treatment. Tapentadol may cause serious or life-threatening breathing problems. It is roughly equianalgesic to hydromorphone.
[2] Lorazepam is in a group of drugs called benzodiazepines and is used to treat anxiety disorders.
[3] Alprazolam is in a group of drugs called benzodiazepines and is used to treat anxiety disorders, panic disorders, and anxiety caused by depression.
[4] Clonazepam is a benzodiazepine that works to prevent seizures and is also used to treat panic disorders.
[5] Diazepam is a benzodiazepine used to treat anxiety disorders, alcohol withdrawal symptoms, or muscle spasms.
[6] Carisoprodol is a skeletal muscle relaxer that blocks pain sensations between the nerves and the brain.
[7] Ketamine is a dissociative anesthetic that has some hallucinogenic effects.
[8] Tramadol is an opioid medicine used for the short-term relief of moderate to severe pain.

**Government's Sentencing Memorandum**            **Page 4**

Furthermore, the parties agree that because defendant, or a person for whose conduct the defendant is accountable under relevant conduct, distributed a controlled substance through mass-marketing by means of an interactive computer service, her offense level should be increased by two levels, pursuant to U.S.S.G. § 2D1.1(b)(7).  PSR ¶ 50, Plea Agreement ¶ 9(A).

The parties also agree that because defendant maintained a premises for the purpose of manufacturing (to include the packaging and repackaging for distribution) or distributing a controlled substance, her offense level should be increased by two levels, pursuant to U.S.S.G. § 2D1.1(b)(12).  PSR ¶ 51, Plea Agreement ¶ 9(B).

Because defendant has satisfied the "safety valve" criteria in 18 U.S.C. § 3553(f) and U.S.S.G. § 2D1.1(b)(18), the government will recommend a two-level downward departure in defendant's Sentencing Guidelines range.  PSR ¶ 52, Plea Agreement ¶ 11.

Based upon defendant's role in the offense, the government believes she qualifies for a two-level role reduction for conduct that can be described as a minor participant, pursuant to U.S.S.G. § 3B1.2(b).  PSR ¶ 54, Plea Agreement ¶ 10(A).

The parties also belies that defendant qualifies as a "Zero Point Offender," pursuant to U.S.S.G. § 4C1.1, and will recommend a two-level downward departure in defendant's Sentencing Guidelines range.  PSR ¶ 57, Plea Agreement ¶ 12.

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, the government will recommend a three-level reduction in defendant's offense level.  PSR ¶¶ 58 – 59; Plea Agreement ¶ 13.

The government and U.S. Probation Office believe defendant's initial adjusted Offense Level for sentencing purposes is 13.  Should the Court agree with the initial Sentencing Guideline Calculations, prior to any other adjustments, with an adjusted Offense Level of 13 and

a Criminal History Category of I, defendant's suggested sentencing range is 12 to 18 months' imprisonment.

Pursuant to 18 U.S.C. § 3553(a), based upon the nature of the offense, the history and characteristics of the defendant, defendant's resolution of a complex case, defendant's performance on pretrial supervision, the mitigation information provided, and to achieve a fair and just resolution of the case, the government will recommend that the Court to grant defendant a three-level downward variance in her overall offense level. Such an adjustment would result in an Offense Level of 10, with a Criminal History Category of I, and an advisory sentencing range of 6 to 12 months' imprisonment. Such a sentence would fall within Zone B of the Sentencing Guidelines.

Defendant has been on pretrial release since July 29, 2022.

C.     **Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a), we ask the Court to sentence defendant to credit for time served, to be followed by a three-year term of supervised release, which is a sentence we believe appropriately balances the seriousness of the crime, defendant's history and characteristics, her performance on pretrial supervision, and the mitigation materials her attorney has submitted.

Defendant's crime, which involved the distribution of hundreds of thousands of real and counterfeit pills, was serious and potentially very dangerous. Although her overall role was minor, she nevertheless helped in the distribution of a substantial quantity of various scheduled controlled substances that was done without a doctor's care or guidance. The pills that were being sold could be counterfeit, contaminated, unsafe, toxic, ineffective, or expired. The people obtaining the drugs could be using them in an effort to treat real illnesses but they may not be getting what they really need, and thus their intended cure may simply be ineffective or worse

yet, harmful and deadly. Others may have been using the drugs to support their addictions. All of the pills defendant was involved in distributing can have very serious adverse health effects, if they are misused, and some of them could result in death.

To defendant's credit, she was a minor participant and once caught she has done everything she could to correct her behavior going forward, including actively engaging with pretrial services. Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of credit for time served is reasonable. We ask the Court to impose it, to be followed by a three year term of supervised release.

At the time of sentencing we ask the Court to dismiss Counts 2, 3, and 4. There is an appeal waiver.

Dated: January 17, 2025.                    Respectfully submitted,

                                            NATALIE K. WIGHT
                                            United States Attorney

                                            /s/ *Scott Kerin*
                                            SCOTT M. KERIN, OSB # 965128
                                            Assistant United States Attorney

**Government's Sentencing Memorandum**                                    **Page 7**